**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROSE TEUSCHER,**

                              **Plaintiff,**                    **6:11-cv-899**
                                                                **(GLS)**

              **v.**

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

                              **Defendant.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Peter W. Antonowicz              PETER W. ANTONOWICZ
148 West Dominick Street
Rome, NY 13440

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN              JOANNE JACKSON
United States Attorney                          Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Mary Ann Sloan
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Rose Teuscher challenges the Commissioner of Social Security's denial of disability insurance benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g).  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering the arguments, the court affirms the Commissioner's decision and dismisses Teuscher's complaint.

### II. Background

On December 3, 2008, Teuscher filed an application for DIB under the Social Security Act ("Act"), alleging disability since June 1, 2000.  (*See* Tr.[1] at 13.)  After her application was denied, Teuscher requested a hearing before an Administrative Law Judge (ALJ), which was held on July 1, 2010.  (*See id.*)  On November 5, 2010, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final decision upon the Social Security Administration Appeals Council's denial of review.  (*See id.* at 1-5, 15-23.)

---

[1]  Page references preceded by "Tr." refer to the Administrative Transcript in this case.  (*See* Dkt. No. 8.)

Teuscher commenced the present action by filing a Complaint on

July 29, 2011, seeking review of the Commissioner's determination.  (*See*

Compl. ¶ 3.)  The Commissioner filed an answer and a certified copy of the

administrative transcript.  (*See* Dkt. Nos. 7, 8.)  Each party, seeking

judgment on the pleadings, filed a brief.  (*See* Dkt. Nos. 12, 13.)

## III.  Contentions

Teuscher contends that the Commissioner's decision was the product

of the application of improper legal standards and is unsupported by

substantial evidence.  (*See generally* Dkt. No. 12.)  Specifically, Teuscher

claims that the ALJ erred in: (1) failing to find that her mental impairments[2]

constituted severe impairments; (2) discrediting her testimony and

statements provided by her sisters regarding her complaints of pain and

functional limitations; and (3) failing to accord appropriate weight to the

opinion of the her treating physician.  (*See id.* at 1, 7-13.)  The

Commissioner counters that the ALJ's decision applied the proper legal

───────────────

[2]  It is noted that Teuscher does not dispute the Commissioner's
finding as to the severity of her physical impairments.  Teuscher's
argument regarding the ALJ's alleged error at step two concerns only her
mental impairments, namely bipolar disorder and a learning disability.
(*See* Dkt. No. 12 at 11.)  As such, the court limits its discussion to
Teuscher's mental impairments.

standards and is supported by substantial evidence.  (*See generally* Dkt. No. 13.)

## IV.  Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations.  (*See* Dkt. No. 12 at 3; Dkt. No.13 at 2.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here.  For a full discussion of the standard and the five-step process used by the Commissioner in evaluating whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

### A.   Severity Determination

Teuscher contends first that the ALJ improperly evaluated the severity of her mental impairments.  (*See* Dkt. No. 12 at 7, 10, 11-12.)  The Commissioner counters, and the court agrees, that substantial evidence supports the ALJ's determination that Teuscher did not have a severe

4

impairment or combination of impairments prior to her date last insured.
(*See* Dkt. No. 13 at 1, 3-7.)

For an impairment or combination of impairments to be deemed
"severe," it must "significantly limit[]" the claimant's "physical or mental
ability to do basic work activities."  20 C.F.R. § 404.1520(c).  To meet the
duration requirement, an impairment must last, or be expected to last, for a
continuous period of at least twelve months.  *See id.* § 404.1509.  A finding
of non-severity results where the claimant suffers "only a slight abnormality
or a combination of slight abnormalities which would have no more than a
minimal effect on [his] ability to work."  *Christiana*, 2008 WL 759076, at *4
(internal quotation marks and citation omitted).  The term "basic work
activities" refers to "the abilities and aptitudes necessary to do most jobs,"
including functions such as "[u]nderstanding, carrying out, and
remembering simple instructions."  20 C.F.R. § 404.1521(b).

When evaluating the severity of mental impairments, an ALJ must
apply "a 'special technique' . . . at the second" step of the sequential
analysis.  *Dehnert v. Astrue*, No. 07-CV-897, 2009 WL 2762168, at *5
(N.D.N.Y. Aug. 24, 2009) (internal quotation marks and citations omitted).
This technique first requires a determination of whether the claimant has a

medically determinable mental impairment. *See* 20 C.F.R. § 404.1520a(b)(1).  The ALJ must then rate the degree of the claimant's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning;[3] (3) concentration, persistence, or pace; and (4) episodes of decompensation.  *See id.* § 404.1520a(c)(3).  A mental impairment is generally found not to be severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation.  *See id.* § 404.1520a(d)(1).

Here, the ALJ found Teuscher suffered from the following medically determinable impairments: multiple thyroid disorders, mild osteopenia, mild degenerative changes of thoracic and lumbar spine, episodes of hypoglycemia, recurrent urinary tract infections, bipolar disorder, and mild cognitive disorder.  (*See* Tr. at 15-17.)  However, the ALJ determined that as of her date last insured—December 31, 2000—Teuscher's conditions, whether considered singly or in combination with her other impairments, constituted only slight abnormalities which did not significantly limit her ability to perform basic work-related activities for twelve consecutive

---

[3] "Social functioning refers to an individual's capacity to interact appropriately and communicate effectively with other individuals." *Dehnert*, 2009 WL 2762168, at *7 (internal quotation marks and citation omitted).

months.  (*See id.* at 17-23.)

Having determined that Teuscher suffered from a medically determinable mental impairment, the ALJ—contrary to Teuscher's contentions, (*see* Dkt. No. 12 at 11)—undertook the special analysis required by 20 C.F.R. 404.1520(a).  (*See* Tr. at 20-21.)  Here, the ALJ determined that Teuscher had no restriction or functional limitation of activities of daily living.  (*See id.* at 16.)  Furthermore, in regard to her activities of daily living, Teuscher indicated that she performed a wide range of physical activities that are inconsistent with her claims of severe functional limitations.  (*See id.* at 44-46.)  Specifically, Teuscher testified that she maintained her personal hygiene, performed household chores, drove a car, went to the grocery store, prepared meals, sang in a church choir, and went dancing and roller skating with her husband.  (*See id.*)

Though Teuscher testified that bipolar disorder, with most symptoms related to episodes of depression, constituted her most significant medical condition that prevented her from working on a full-time basis, (*see id.* at 36), she also indicated that she did not experience any episodes of depression in 2000, (*see id.* at 45).  Teuscher further admitted that she felt she was doing "fairly well" during the period prior to her date last insured,

and did not have any difficulty performing her activities of daily living prior to December 31, 2000.  (*See id.* at 45, 51.)  Accordingly, substantial evidence in the record supports the ALJ's determination that Teuscher's mental impairments did not restrict her activities of daily living.  (*See id.* at 22.)

With respect to her social functioning, Teuscher admitted that she performed average socially in college, remained close with her family members, and maintained a good relationship with her husband.  (*See id.* at 185, 188, 477.)  The ALJ's determination that Teuscher did not experience significant difficulty interacting in public places is further supported by the fact that Teuscher was capable of going to the grocery store, attending medical appointments, and singing in her church choir prior to her date last insured.  (*See id.* at 20, 44-46.)

The ALJ additionally determined that Teuscher's bipolar disorder and learning disability caused no more than a "mild" limitation of her ability to maintain concentration, persistence, or pace.  (*Id.* at 16.)  In a November 2009 report, Dr. Robert Petrie, Teuscher's treating physician, assessed

Teuscher as having a "poor ability"[4] to deal with work stress, function

independently, maintain attention/concentration, and understand,

remember, and carry out complex job instructions prior to December 31,

2000.  (*See id.* at 623-24.)  The report, however, indicated Teuscher had a

"fair ability"[5] to relate to co-workers, deal with the public, use judgment,

relate to supervisors, understand, remember, and carry out detailed, but

not complex job instructions, and understand, remember, and carry out

simple job instructions.  (*See id.*)

Teuscher also testified that her learning disability constituted her

second most significant condition that limited her ability to work on a

full-time basis, and caused her to require extra time for exams and

assistance with papers in college.  (*See id.* at 39.)  Despite this testimony,

Teuscher completed her associate degree in physical therapy assistance in

June 2000.  (*See id.* at 44-46, 477.)  She also indicated that she performed

_____

[4] A designation of "poor" indicates that the claimant's "ability to function in this area is seriously limited.  Ability to function is less than satisfactorily maintained for periods in excess of 2 or 3 hours per day, 5 days per week."  (Tr. at 623.)

[5] A designation of "fair" indicates that the claimant's "ability to function in this area is limited but satisfactorily maintained only up to 5 hours per day, 5 days per week."  (Tr. at 623.)

above average academically, (*see id.* at 188), previously completed associates degrees in nursing and recreation leadership, (*see id.* at 30), and effectively managed her finances prior to her date last insured, (*see id.* 47-48).

Finally, the ALJ determined that the record was devoid of any evidence indicating episodes of decompensation prior to Teuscher's date last insured.  As the ALJ noted, the medical record shows that, despite hospitalizations for hallucinations and delusions in July 1987 and January 1990, Teuscher did not require further hospitalization or emergency treatment prior to her date last insured.  (*See id.* at 40- 41, 48-50.) Between June 1, 2000 and December 31, 2000—the period at issue here—Teuscher was not prescribed any medications to treat her mental impairments.  (*See id.* at 223, 477.)  Teuscher admitted that she did not suffer any periods of depression in 2000, and that she did not begin regular mental health counseling until after January 2001.  (*See id.* at 21, 41,45.) Further, several of Teuscher's treating sources responded to the Commissioner's request for medical records by indicating that they did not have medical evidence relevant to the adjudicative period.  (*See id.* at 614.)

In sum, after applying the "special technique" at the second step of

10

the sequential evaluation process, the ALJ determined that Teuscher had no more than a minimal limitation of her ability to perform basic work-related activities. (*See id.* at 22.) Accordingly, the ALJ applied the correct legal standard in evaluating the severity of Teuscher's mental impairments, and his determination that Teuscher's mental impairments were not severe is supported by substantial evidence.

## B.   Credibility Determination

Teuscher argues next that the ALJ improperly discredited her testimony and the statements provided by her two sisters, Christine Boulanger and Marie Robertson, regarding her complaints of pain and functional limitations. (*See* Dkt. No. 12 at 10.) The Commissioner counters, and the court agrees, that the ALJ properly assessed the credibility of Teuscher and her sisters. (*See* Dkt. No. 13 at 7-10; *see also* Tr. at 19-22.)

Once an ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the pain alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's pain contentions are not substantiated by the objective

medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*

*v. Astrue*, 370 F. App'x 179, 183-84 (2d Cir. 2010) (quoting 20 C.F.R. §

404.1529(c)(1), (c)(3)(i)-(vii)).  In performing this credibility analysis, the

ALJ "must consider the entire case record and give specific reasons for the

weight given to the [claimant's] statements."[6]  SSR 96-7p, 1996 WL

374186, at *4 (July 2, 1996).

In this case, the ALJ determined that Teuscher's "use of medication

and course of treatment [were] inconsistent with her claims of significant

functional limitations for the period prior to her date last insured."  (*See* Tr.

at 19.)  As previously noted, between June 1, 2000 and December 31,

2000, Teuscher was not prescribed any medications to treat her mental

---

[6] In addition to the objective medical evidence, the ALJ must consider the following factors in making his credibility determination:

(1) claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.

*Meadors*, 370 F. App'x at 184 n.1 (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

impairments, (*see id.* at 223, 477), did not require hospitalization or emergency treatment, (*see id.* at 40-41, 48-50), and did not begin regular mental health counseling until after January 2001, (*see id.* at 41).  Further, several of Teuscher's treating sources responded to the Commissioner's request for medical records by indicating that they did not have medical evidence relevant to the adjudicative period.  (*See id.* at 614.)

Additionally, the ALJ properly determined Teuscher's claims of significant functional limitations were inconsistent with her own testimony of her activities of daily living.  (*See id.* at 20.)  Though Teuscher stated that her bipolar disorder constituted her most significant condition that prevented her from working, (*see id.* at 36), she testified that she did not experience any problems related to depression in 2000, cared for her home, went to the grocery store, prepared meals, drove a car, managed her finances, cared for her appearance and personal hygiene, and engaged in hobbies such as dancing, roller skating, and singing in a church choir, (*see id.* at 44-46).  With regard to her learning disorder, Teuscher successfully completed her third associate degree in June 2000.  (*See id.* at 45-46.)

In assessing Teuscher's credibility, the ALJ additionally determined

that her statements of physical pain and limitations were inconsistent with objective medical evidence in the record.  (*See id.* at 19.)  Though Teuscher complained of tiredness, fatigue, depression, and difficulty sleeping, she did not seek further treatment for hypothyroidism.  (*See id.* at 19, 476-78.)  Despite complaints of lower back pain, Teuscher did not receive significant treatment for osteopenia or degenerative changes of her thoracic and lumbar spine.  (*See id* at 19, 468-69, 520.)  Medical reports also indicate that Teuscher's recurrent urinary tract infections quickly improved with appropriate medical treatment (*see id.* at 20, 527), and her hypoglycemic episodes "appeared better controlled" after modifications to her diet (*see id.* at 20, 541).

Furthermore, the ALJ also appropriately discredited the statements of Teuscher's sisters after determining that they were inconsistent with both the medical record and Teuscher's testimony.  (*See id.* at 22.)  The events described in Boulanger's statement—recounting episodes where Teuscher became extremely depressed while caring for her first husband, and planning her second husband's birthday party—occurred outside of the adjudicative time period.  (*See id.* at 168.)  Similarly, Robertson's account of Teuscher's unrealistic desire to author a book which would solve "most

of life's problems," occurred in 1987.  (*See id.* at 48-49, 160.)  Finally,

Robertson's statement, describing Teuscher's frequent depressive

episodes, is inconsistent with Teuscher's testimony that she did not suffer

any serious episodes of depression in 2000.  (*See id.* at 45, 51, 160.)

Accordingly, the ALJ's decision that statements from Teuscher and

her sisters lacked credibility is supported by substantial evidence in the

record.

## C.   Treating Physician's Opinion

Finally, Teuscher argues that the ALJ improperly granted greater

weight to the opinions and findings of a state agency medical consultant

than of her treating physician.  (*See* Dkt. No. 12 at 10.)  The Commissioner

counters, and the court agrees, that the ALJ properly accorded controlling

weight to the opinion of the state agency medical consultant, T. Harding,

M.D.  (*See* Dkt. No. 13 at 6-7.)

Controlling weight will be given to a treating physician's opinion that

is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial

evidence."  20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d

28, 32 (2d Cir. 2004).  However, an ALJ may accord less deference to the

opinion of a treating physician where evidence in the medical record tends to "contradict" the physician's opinion.  *See Waverick v. Astrue*, 420 F. App'x 91, 93 (2d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (d)(3)-(6)).  In such instances, an ALJ is entitled to rely upon the opinions of a state agency medical consultant regarding what a claimant can still do despite any impairments.  *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c).  The "opinions of non-examining sources may even override the treating source's opinions provided they are, as here, supported by evidence of record."  *Hill v. Astrue*, No. 5:11-cv-00026, 2012 WL 2178925, at *8 (N.D.N.Y. June 13, 2012).

Here, evidence in the medical record is at odds with Dr. Petrie's opinion that Teuscher suffered from a severe impairment prior to her date last insured.  Dr. Petrie's conclusion that Teuscher was seriously debilitated due to the effects of bipolar disorder, hypothyroidism, and fibromyalgia contradicts Teuscher's testimony and medical history regarding her medical conditions during the relevant time period.  (*See* Tr. 36-40, 44-48.)  As previously discussed, although bipolar disorder, with most symptoms related to episodes of depression, constituted Teuscher's most significant condition prior to her date last insured, she testified that

16

she did not experience any episodes of depression in 2000.  (*See id.* at 36, 45.)  Despite some complaints of tiredness, fatigue, depression and difficulty sleeping when her thyroid levels were low, the record is devoid of any evidence indicating that Teuscher received any further treatment for hypothyroidism outside of her regular medication regimen.  (*See id.* at 476-78.)  Finally, despite her reports of symptoms such as joint pain, anxiety, and mood swings, Teuscher was not diagnosed with fibromyalgia until May 2001.  (*See id.* at 30-40.)

Evidence received from Teuscher's treating and examining sources also contradict Dr. Petrie's opinions of Teuscher's impairments.  Dr. Petrie admitted that because he did not see Teuscher for the period at issue, and did not begin treating her until October 2003, he based his opinions on Teuscher's functional limitations from office notes and records in his possession.  (*See* Dkt. No. 12 at 8.)  When the Commissioner requested records from other treating sources listed by Teuscher, several sources responded that they did not have any medical evidence relevant to the adjudicative period.  (*See* Tr. at 614.)

Because the ALJ properly articulated the substantial evidence in the medical record which contradicted Dr. Petrie's opinion, the court finds no

error in his attribution of greater weight to Dr. Harding's opinion. *See Waverick*, 420 F. App'x at 93 (citing 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (d)(3)-(6)).

## D. **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. **Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Teuscher's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

July 26, 2012
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court